# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 7, 2007

Charles R. Fulbruge III
Clerk

No. 06-30658

BEN W DART III, BUTLER CREEK LLC

                    Plaintiff-Appellant

v.

KITCHENS BROTHERS MANUFACTURING CO; TRAVELERS PROPERTY CASUALTY

                    Defendants-Appellees

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:03-CV-227

Before DENNIS, CLEMENT, and PRADO, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:[*]

Ben W. Dart III, Butler Creek, L.L.C. ("Dart") appeals the district court's dismissal of his complaint for breach of contract against Kitchens Brothers Manufacturing Co. ("Kitchens Bros."). Dart argues that the trial court erred in excluding the testimony of two of Dart's expert witnesses. For the following reasons, we AFFIRM.

## I. FACTS AND PROCEEDINGS

---

[*] Pursuant to 5TH CIR. R. 47.5, this Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Dart owned 271.1 acres of land in West Feliciana Parish, Louisiana. He planned to harvest the timber for sale and then sell the land. In June 2001, Dart entered into a timber contract with Kitchens Bros., under which he sold all standing timber above sixteen inches in diameter. In turn, Kitchens Bros. subcontracted third parties to harvest the timber and to repair the property. The contract contained certain restrictions and obligations relating to the manner in which the timber should be harvested. The contract provided that "on the entire property, the ground would be left in as good a condition upon termination [of the harvest] as when operations started." Additionally, the contract stated that "timber shall be cut and removed in accordance with Louisiana Best Management Practices [("BMPs")]," and that "no logging operation should take place during periods of extreme weather."[1]

After Kitchens Bros. notified Dart in April 2002 that the timber harvest had been completed and that the property had been restored, Dart inspected the property and allegedly found significant erosion and other evidence that Kitchens Bros. had failed to abide by the BMPs. Dart sued Kitchens Bros. for breach of contract in April 2003, claiming damages for failing to harvest the timber properly. Dart retained Cornelis de Hoop, Ph.D. ("Dr. de Hoop") in 2003 to inspect the property for BMP violations and damages and A.D. Primeaux ("Primeaux") in January 2004 to measure and calculate the amount of soil removed from the area.

Kitchens Bros. requested a hearing to evaluate the qualifications and methodologies of both Dr. de Hoop and Primeaux as experts under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593 (1993).[2] After a three-

---

[1] "Louisiana Best Management Practices" is a term of art in the timber industry referring to the guidelines established by the Louisiana Department of Agriculture and Forestry for the purpose of reducing erosion and maintaining water quality.

[2] Both parties consented to have their dispute heard by a magistrate judge.

day hearing, the magistrate judge excluded both testimonies, finding that both were unreliable and did not meet the requirements for expert testimony under Rule 702 of the Federal Rules of Evidence.[3] The magistrate judge then dismissed the case for lack of evidence. Dart appeals the magistrate judge's exclusion of the expert testimonies of Dr. de Hoop and Primeaux and argues that the magistrate judge improperly dismissed the case.

## II. STANDARD OF REVIEW

We review the admission or exclusion of expert testimony under Daubert for abuse of discretion. Pipitone v. Biomatrix, Inc., 288 F.3d 239, 243 (5th Cir. 2002).

## III. DISCUSSION

Rule 702 establishes the standards for determining whether expert testimony is admissible to assist the fact finder to understand the evidence. For any expert opinion on scientific, technical, or specialized knowledge to be admissible, Rule 702 identifies three standards: "(1) the testimony [must be] based upon sufficient facts or data, (2) the testimony [must be] the product of reliable principles and methods, and (3) the witness [must have] applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. Explicating these standards for admission, the Supreme Court in Daubert instructed trial courts to act as "gatekeepers" for admissible expert testimony and provided an illustrative list of factors that courts may use when evaluating the reliability of such testimony. 509 U.S. at 592–93. These factors include whether the expert's theory or technique can be or has been tested, whether it has been subjected to peer review, whether it has a known or potential rate of

---

[3] After the second day of the Daubert hearing, Dart reduced his claim, confining the claim to one small area of the property and significantly reducing the amount of damages he sought from over $2 million to less than $300,000.

error or standards controlling its operation, and whether it is generally accepted in the relevant scientific community. Id. at 593–94.

"In short, expert testimony is admissible only if it is both relevant and reliable." Pipitone, 288 F.3d at 244. Therefore, the use of the Daubert factors in determining whether testimony is admissible should be flexible and "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999) (internal quotations omitted). Under this flexible approach, for certain types of claims, "the expert's testimony [can be] based mainly on his personal observations, professional experience, education and training." Pipitone, 288 F.3d at 247.

Nonetheless, the question of whether an expert's testimony is reliable is ultimately a fact-specific inquiry. Burleson v. Tex. Dep't of Criminal Justice, 393 F.3d 577, 584 (5th Cir. 2004). The proponent of the expert testimony must prove reliability by a preponderance of the evidence. Moore v. Ashland Chem. Inc., 151 F.3d 269, 276 (5th Cir. 1998) (en banc). It is then the district court's responsibility to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at 152.

Here, Dart argues that the accepted method of determining BMP violations is through observation based on the expert's experience, education, and training. Kitchens Bros. did not dispute this argument. Indeed, "this circuit has upheld the admission of expert testimony where it was based on the expert's specialized knowledge, training, experience, and first-hand observation while supported by solid evidence in the scientific community." Pipitone, 288 F.3d at 247. For example, we have upheld the admission of testimony from an expert on marshland who assessed liability for marsh deterioration based solely upon

personal observations and expertise. St. Martin v. Mobil Exploration & Producing U.S. Inc., 224 F.3d 402, 405–06 (5th Cir. 2000). Because "[e]ach marsh will have different forces acting upon it, depending upon its specific location and its surroundings . . . a court could not rationally expect that a marshland expert would have published a peer-reviewed paper on each possible permutation of factors or each damaged area of marsh." Id. at 406.

However, "[d]istrict courts enjoy wide latitude in determining the admissibility of expert testimony, and the discretion of the trial judge and his or her decision will not be disturbed on appeal unless manifestly erroneous." Watkins v. Telsmith, Inc., 121 F.3d 984, 988 (5th Cir. 1997) (internal quotations omitted). Although a trial judge's discretion should be supported by "adequately supported findings," St. Martin, 224 F.3d at 406, the trial judge must not apply the reliability factors too stringently and "transform a Daubert hearing into a trial on the merits." Pipitone, 288 F.3d at 250. We evaluate, therefore, whether the magistrate judge here abused her discretion by either failing to support her findings adequately or applying the Daubert reliability factors too stringently.

The record indicates that the magistrate judge took significant care to weigh the Daubert factors against the methodologies used by Dr. de Hoop and Primeaux. The magistrate judge found that Dr. de Hoop's methodology was deficient in a number of ways. She found that he (1) failed to explain exactly how Kitchens Bros. violated the BMPs, (2) could not establish that his method had ever been used before and did not compare his method with an established one, (3) had never assessed damages caused by failing to follow BMPs, (4) did not testify in a way that permitted him to extrapolate the claim for damages to the land, (5) did not begin his testing of the land until two years after operations had ceased, (6) did not explain how he accounted for the lapse of time or intervening factors like all-terrain vehicle use or weather, and (7) lacked a baseline for knowing whether the damage he observed was recently caused. She also found

5

that Primeaux's proposed testimony suffered from similar flaws, notably the lack of a pre-harvesting baseline and inadequate treatment of other potential causes for erosion. Additionally, the record shows that Primeaux admitted to basic mathematical errors in his report that were subsequently relied upon by Dr. de Hoop to assess damages. Because of the flaws in the underlying calculations, any calculation of damages would also be unreliable.

Dart contends that the magistrate judge simply did not understand Dr. de Hoop's testimony. To explain Dr. de Hoop's testimony, Dart offers a scant recitation of highlights from the hearing without an effort to address many of the concerns raised by the magistrate judge. We are not persuaded by Dart's argument regarding the magistrate judge's level of comprehension of both experts' testimonies and hold that the magistrate judge adequately supported her findings in excluding the testimonies of both experts.

The record also does not suggest that the magistrate judge applied the Daubert factors too stringently by limiting her assessment of the reliability of each expert only to those factors. Indeed, the magistrate judge considered Dr. de Hoop's general expertise in BMPs and his familiarity with the terrain, but concluded that his expertise did not extend to reliability in assessing damages in relation to BMP violations. Likewise, the magistrate judge considered Primeaux's experience and expertise in calculating soil erosion, but ultimately rejected his testimony for basic mathematical errors and flaws in methodology. Therefore, we hold that the magistrate judge's application of the Daubert factors in evaluating the experts' testimonies was not manifestly erroneous.

## IV. CONCLUSION

We hold that the magistrate judge did not abuse her discretion in excluding the expert testimonies of Dr. de Hoop and Primeaux and, therefore, properly dismissed the case for lack of evidence. The judgment of the district court is AFFIRMED.